# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA   *

vs.   Case No. 1:20-cr-00084-DKC

Ranair Pratcher   *

******

## MEMORANDUM AND ORDER

Defendant has moved for a reconsideration of this Court's original detention order. (ECF No. 19). The Government has filed its Opposition. (ECF No 20). Defendant has filed a Reply. (ECF No. 21). The Court finds that no hearing is necessary. As set forth more fully below, Defendant's motion is DENIED.

On October 16, 2019, Baltimore City Police approached a stopped vehicle driven by Defendant after a license plate reader alerted that the vehicle was connected to a previous homicide. (ECF No. 20 at 4). Police identified Defendant as the driver and also identified a passenger. *Id*. at 5. When police attempted to further question the occupants, they fled in the vehicle, leading police on a high-speed chase that culminated in the vehicle crashing into a dry-cleaning business. *Id*. Defendant and his passenger then took off on foot, with Defendant discarding what proved to be 23 gel caps containing fentanyl and cocaine prior to falling. *Id*. A search of the vehicle yielded two loaded stolen firearms in plain view on the driver's and passenger's side of the vehicle, and another 25 gel caps (confirmed to be heroin, cocaine and fentanyl) and $1380 in cash on the driver's side floor. *Id*. The passenger was in possession of yet another 28 green top vials of cocaine. *Id*. Defendant was indicted on drug conspiracy, possession with intent to distribute, and possession of a firearm in furtherance of a drug trafficking crime. *Id*. at 4.

On March 20, 2019, the Court held a detention hearing. The Defense proffered that Defendant did not own the vehicle he was driving, and that there was no evidence linking him to any homicide. The Defendant has no prior convictions (although he had a drug possession and gun charge placed on the STET docket and another gun charge *nolle prossed*) and a history of continuous employment until 2016. The Court recognized Defendant's underlying condition of asthma, which put him at increased risk for complications from COVID-19 should he contract it. Defense Counsel also proffered that despite being held on these charges by the State of Maryland since the time of his arrest in October of 2019, Defendant was in the final stages of being authorized for conditional release on home monitoring when the federal indictment intervened and he was taken into federal custody.

The Court found probable cause to conclude that Defendant committed the charged offenses, that the Defendant had failed to rebut the presumption of detention accompanying both the drug and gun charges, that the Government had proven by clear and convincing evidence that the Defendant posed a danger to community safety, and that the Government had proven by clear and convincing evidence that there was no condition or combination of conditions that would reasonable assure community safety should Defendant be released pending trial. (ECF No. 17). Of particular significance, the Court noted the strength of the Government's proffer given the items recovered in a search of the vehicle and from the occupants, the presumption of detention, the recommendation for detention from Pretrial Services, the nature and circumstances of the offense (involving strong evidence of drug distribution and loaded weapons in easy reach), and the high speed chase with law enforcement to evade arrest. *Id*.

The Court also observed that, in response to Defense Counsel's proposal of home detention subject to 24/7 location monitoring, the proposed third-party residence included occupants with significant criminal history and that it was the same residence occupied by Defendant at the time of the events described above. *Id*. Noting that it was not promising any different conclusion, the Court added that if an appropriate third-party custodian and residence could be located, the Court would allow Defendant to argue "material changed circumstances" pursuant to 18 USC 3142(f)(2)(b), but that it would also allow any additional argument from the Government.

Defendant has now offered an alternative residence and third-party custodian, as previously authorized to do by the Court. (ECF 19 at ¶ 3). According to Pretrial Services, the proposed third-party custodian is a family friend of six years who resides in an apartment with her two young children and, on occasion, her boyfriend. She is employed as an unarmed security guard working 12:00 am to 8 am. Although Pretrial Services finds her to be a suitable third-party custodian, its recommendation remains detention. The Government also still opposes release.

Defendant also reiterates concerns regarding the COVID-19 pandemic and the risks it raises for detained individuals given the lack of social distancing, especially those like Defendant, who have underlying health conditions (here, asthma). (ECF 19 at ¶ 4). Defendant does not reargue any of the other 3142(g) factors, except to again point out that Defendant did not own the vehicle he was driving, and that there is no evidence linking him to any homicide. (ECF No. 21 at ¶ 7).

In its Opposition, the Government raises no new arguments on the 3142(g) factors, but does detail specific measures being taken at the Correctional Treatment Facility ("CTF") where Defendant is housed so as to mitigate the risk of contracting COVID-19 and, if necessary provide treatment to detainees who become infected. (ECF No. 20 at 7-11).

As the Court has recognized in the many requests for release that it is addressing, COVID-19 is an unprecedented public health emergency that raises particular risks for those in custodial settings, such as pretrial detainees, given the challenge in such facilities in fully implementing public health guidance while maintaining adequate security. This Court has been clear that, particularly in the setting of someone like Defendant with a recognized underlying health condition, the proper course is to consider COVID-19 as a relevant factor in its

individualized detention analysis pursuant to 3142(g), both as to the health concerns of citizens in detention, but also health concerns for a defendant and the community should release occur. In short, these detention decisions are a balancing of risks, including not only the traditional risks recognized in the Bail Reform Act, but also the additional risks to a defendant and the community from the COVID-19 pandemic.

Looking at this case, the Court's previous individualized analysis at the detention hearing on March 20, 2020 led it to conclude by clear and convincing evidence that detention was appropriate, particularly given the presumption of detention for such crimes that Congress included in the Bail Reform Act. Accordingly, the Court must now factor now analyze the additional information regarding a new proposed residence/custodian and the issues arising from COVID-19.

As to the former, at the time the Court stated that it would allow additional argument should an appropriate residence/custodian emerge, the Court also had available to it the ability to have 24/7 electronic monitoring to ensure compliance. Because of health recommendations occasioned by COVID-19, Pretrial Services can no longer install that tool. Although the Court may order home detention, technical limitations prevent that condition from being continuously monitored, providing only sporadic evidence of compliance. This gives the Court significant pause.

As for COVID-19 concerns, Defendant does not argue that the measures in place at CTF are not being performed or that that have been ineffective as to Defendant. While there have been more identified cases of COVID-19 notwithstanding these measures, that is true in nearly all settings, not just custodial ones. Moreover, Defendant does not suggest a release plan that would necessarily lower those risks sufficiently to counterbalance the other factors that weight in favor of detention. The third-party custodian leaves for work. Her boyfriend is a sometime occupant. The apartment already has three (and sometime 4) occupants, limiting the ability of Defendant to self-quarantine should he be released. This, combined with the obvious community risks occasioned by drug distribution accompanied by loaded guns in easy reach, cause the Court to conclude that, on balance, detention is still appropriate.

Accordingly, Defendant's Motion is **DENIED**.

| | |
|---|---|
| 4/9/2020 | /s/ |
| Date | J. Mark Coulson |
| | United States Magistrate Judge |